Benjamin F. Haas and Addie R. Haas v. Commissioner.
Haas v. Commissioner
Docket No. 56640.
United States Tax Court
T.C. Memo 1956-50; 1956 Tax Ct. Memo LEXIS 249; 15 T.C.M. (CCH) 211; T.C.M. (RIA) 56050; February 29, 1956
*249 Petitioner, Benjamin F. Haas, organized Oxford Looms, Inc., a woolen mill, in 1933. All of the outstanding common stock was given to his daughter. Petitioners owned the nonvoting preferred stock. From the time of its incorporation to and throughout 1948, 1949, and 1950, the years here in issue, petitioners advanced various sums of money to Oxford. The sums advanced during 1948 were pursuant to an agreement whereby in consideration for such advances, petitioner and Oxford agreed to share the profits and losses of the corporation on a 50 per cent basis. In 1949 and 1950, petitioners advanced funds under a similar agreement, except that they were to assume all losses. All advances made during the three years were to be repaid prior to any division of profits. Oxford sustained net operating losses in each of the three years. Petitioners deducted one-half of the loss in 1948 and the entire losses in 1949 and 1950 on their tax returns for such years. The record does not show that they reimbursed Oxford for the net operating losses and, at the end of 1950, the books of the corporation showed as a debt owed to petitioners the outstanding balance of the amounts which they had advanced. Held, *250 petitioners sustained no actual losses in connection with the operation of Oxford Looms, Inc., during the years in issue which are deductible under any provision of the 1939 Code. James R. Worsley, Jr., Esq., for the petitioners. Ellyne E. Strickland, Esq., and Emil Sebetic, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves the *251 following deficiencies in income tax determined by the respondent under the provisions of the 1939 Code: Year
Deficiency
1948
$10,758.81
1949
20,874.64
1950
24,619.24
The only issue is whether petitioners sustained deductible losses during the years in issue in connection with the operation of a woolen mill. [1]
Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Benjamin F. Haas (hereinafter referred to as the petitioner) and his wife, Addie R. Haas, were residents of New York, New York, during the years in issue and filed their Federal income tax returns on the cash receipts and disbursements basis with the collector of internal revenue for the third district of New York. Petitioner has enjoyed a long and successful career in the textile business. On July 10, 1933, he organized Oxford Looms, Inc. *252 , a woolen mill (hereinafter referred to as Oxford), under the laws of Massachusetts. He had all of its authorized common stock, consisting of 500 shares, issued to his daughter, Marian H. Stern, as a gift. She continued to hold all of the authorized and outstanding common stock of Oxford to and throughout the years in issue. Since the time of its incorporation to and throughout the years in issue, the operation and management of Oxford has been under the direct supervision and control of petitioner. He was primarily responsible for all important policy and operational decisions of the mill. Petitioner's daughter, as the sole owner of Oxford's common stock, has relied primarily upon her father with respect to any actions in connection with the mill which it was necessary for her to take. From the time of its incorporation until August 22, 1936, petitioner and his wife loaned various sums of money to Oxford. In consideration for the cancellation of the debt thus owed to them, Oxford, on that date, issued to them 500 shares of nonvoting 6 per cent cumulative preferred stock having a total par value of $50,000. Petitioner continued to advance money to Oxford and, on January 1, 1944, Oxford *253 owed him $110,859.13. From January 1, 1944 to December 31, 1946, it repaid $66,780.00 of such sum. From some time in 1942 until June 30, 1947, Oxford's plant and equipment were leased to another corporation. When the lease terminated in 1947, the woolen industry was in a depressed state. On January 12, 1948, petitioner and Oxford agreed that they would enter into a joint venture in which petitioner would provide the working capital for the mill and Oxford would provide its equipment and facilities. Petitioner and Oxford were to share the profits or losses from their joint venture equally. The agreement between them also provided that petitioner was to be repaid all advances which he made before any division of profits. On January 3, 1949, a similar agreement was entered into between petitioner and Oxford except that petitioner's wife was also to advance money and he and she were to bear all losses of the joint venture but were still to divide any profits with Oxford on a 50 per cent basis after repayment of indebtedness owed to them. The agreement of January 3, 1949, continued in effect throughout 1950. During the three years in issue, petitioner and his wife advanced a total of *254 $105,712.88, and received payments totaling $7,800.00. At the end of December 1950, Oxford's books showed an outstanding balance owed to them of $97,912.88. The joint venture during the three years in issue in which Oxford furnished the equipment and facilities and petitioner and his wife furnished the working capital for the operation of the mill resulted in net losses as follows: 1948
$38,685.28
1949
32,068.96
1950
46,436.07
Oxford filed Federal income tax returns disclosing a net loss for the year 1948 of $18,998.26, and no taxable net income or loss for the years 1949 and 1950. On its 1948 return, it showed an item labeled as "Portion of Loss Assumed by Agreement" in the amount of $18,998.26, and on its returns for the years 1949 and 1950, showed items labeled "Loss Assumed by Agreement" in the amounts of $39,043.78 and $45,978.91, respectively. On their individual returns for the years in issue, petitioners claimed losses from the operation of Oxford as follows: 1948
$20,361.24 [2]
1949
39,043.78
1950
45,978.91
*255 In determining the deficiencies herein, the respondent disallowed the loss deductions so claimed. Opinion RICE, Judge: The petitioners advanced two theories in support of the deductibility of the losses in issue. They first argue that the losses in question were incurred by them in a transaction entered into for profit within the meaning of section 23(e)(2), and, in the alternative, that they were losses incurred in their trade or business within the meaning of section 23(e)(1). No deductible losses are claimed by petitioners on the basis of the worthlessness of a debt owed to them as a result of their advances. Their arguments are confined solely to the net operating losses sustained by Oxford. The respondent, on the other hand, argues in support of his disallowance of the claimed loss deductions, that the transaction between petitioner and Oxford was not a bona fide arm's length transaction and that the losses resulting therefrom are, therefore, not deductible. He says: "Respondent contends that under all the facts and circumstances in the instant case, it is obvious that the transactions were not carried out in the way that ordinary parties to a business transaction would *256 deal with each other, and accordingly petitioners have not established their right to deduct such losses." That argument is incomplete and undeveloped. But in any event, neither party, it seems to us, has come to grips with what we perceive to be the real point in issue here; namely, did petitioners, in fact, sustain actual losses during each of the three years in issue? The operation of Oxford from 1948 to 1950, inclusive, resulted in net operating losses. Petitioner agreed to assume one-half of such loss in 1948, and he and his wife agreed to assume the entire net operating losses in 1949 and 1950. But the record fails to disclose in what manner petitioners assumed the losses during any of those years except to deduct them on their tax returns. Oxford agreed to repay all of the sums which they advanced for use as working capital, and at the end of 1950, its books showed the total cumulative advances less the small repayments made during the three-year period, as a debt owed to them. Oxford's own income tax returns showed that its losses had been "assumed" but what its books actually reflected with respect to those losses we do not know. There is no evidence that petitioners made *257 good the losses by payments in the amounts thereof to the corporation; and, as noted above, it still acknowledged the amount of their advances as a debt which it owed to them. Also, there is no evidence that the corporation was insolvent or that it went out of business. For all that appears of record, Oxford may still be in existence and in a sound financial position. Hence, we do not think petitioners have proved they sustained any out-of-pocket, actual losses which they are entitled to deduct on their tax returns. , revd. (C.A. 5, 1953). The Haley case concerned a taxpayer's attempt to deduct his share of the net operating losses of a bona fide joint venture with a corporation. The facts there disclosed that for his share of such losses, he gave the corporation his promissory notes. In disallowing a loss deduction, we said, p. 1515: "* * * he never put his potential share of the losses on a cash and closed basis by paying a part of the principal of those notes * * *. He had suffered no out-of-pocket losses in connection with the operation of the business up to that time. * * * A taxpayer, using *258 the cash receipts and disbursements basis, has no right to deduct on his own return an operating loss of a business under such circumstances until he is actually out of pocket by making payments on the notes which he gave to his associate in the business to evidence his promise to reimburse that associate for one-half of the money advanced and lost in the unsuccessful operation of the business. * * *" We think that is precisely the situation before us here except that here there were not even promissory notes evidencing petitioners' assumption of Oxford's losses but only their agreement to "assume" those losses. So far as this record shows, the only "assumption" of losses which petitioners undertook was to deduct such losses from their tax returns and reap a substantial tax benefit thereby. We are aware, of course, that our decision in the Haley case was reversed by the Court of Appeals but we respectfully decline to follow that reversal. Our holding there and here seems to us to be in accord with the holding of ; and , that a cash basis taxpayer is entitled to deduct losses only *259 when he actually sustains losses as the result of cash payments. Here, petitioners sustained no out-of-pocket cash losses and, hence, no losses which are deductible under any provision of the Code. In support of their arguments, petitioners rely heavily on (C.A. 1, 1931). In that case, the principal officer of a corporation, who was one of its stockholders, entered into an agreement with the other stockholders that he would serve as president, treasurer, and general manager of the company, would receive all of the net profits of the corporation, and would be liable for all losses incurred in its operation. The corporation thereafter sustained losses which the officer made good. The Court of Appeals held that such losses were deductible by him. That case is obviously distinguishable from the one before us here because there the taxpayer really sustained out-of-pocket losses by making good the corporation's net operating deficits. Decision will be entered for the respondent. Footnotes
1. Error was assigned for the year 1950 with respect to the amount of deductible medical expenses in excess of 5 per cent of adjusted gross income only insofar as the amount of adjusted gross income is affected by the disallowance of the loss deductions here in issue.↩
2. The record does not disclose why the loss deduction claimed by petitioner and Oxford was more than the total net operating loss as stipulated by the parties.↩